UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                            Case No.: 8:12-cv-01087-JSM-TGW

BRIDGEWATER COMMUNITY
ASSOCIATION, INC.,
    Defendant.
_____/

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
## AND INCORPORATED MEMORANDUM OF LAW

Defendant, BRIDGEWATER COMMUNITY ASSOCIATION, INC. ("Bridgewater"), by and through its undersigned counsel and pursuant to Federal Rule of Civil Procedure 56 and Local Rules of the Middle District of Florida, hereby moves for a Summary Judgment and in support of this motion, states as follows:

## INTRODUCTION AND BACKGROUND

1.    On September 27, 2004, Universal American Mortgage Company, LLC issued a mortgage. The mortgage was recorded September 29, 2004 and subsequently assigned to Wells Fargo Bank, N.A. ("Wells Fargo"). The mortgage encumbered real property ("the property") located at 31132 Masena Drive, Wesley Chapel, Florida 33544, legally described as:

> Lot 11, Block 10, BRIDGEWATER PHASE 1 and 2, according to the Plat thereof as recorded in Plat Book 48, Page 110, of the Public Records of Pasco County, Florida, and any subsequent amendment thereto.

2.    On March 6, 2008 Wells Fargo filed a mortgage foreclosure action in the Circuit Court of Pasco County, Florida.

3.    On August 6, 2008 a Claim of Lien for unpaid homeowner's association

assessments was recorded in the public records of Pasco County, Florida. See Exhibit "**A**."

4. On February 12, 2010, Wells Fargo obtained a final judgment of mortgage foreclosure. The foreclosure sale was held on April 13, 2010 and Wells Fargo was the successful bidder.

5.. On April 15, 2010, Wells Fargo conveyed its interest in the property to the Secretary of Housing and Urban Development, ("HUD"), by special warranty deed.

6.. On May 26, 2010, a Certificate of Title was issued to Wells Fargo. See attached Exhibit "**B**." On June 17, 2010 the special warranty deed conveying the property to HUD was recorded. See attached Exhibit "**C.**"

7. On July 1, 2011, Bridgewater issued an Estoppel Certificate, pursuant to Florida Statutes Chapter 720 and the Declaration for Bridgewater for unpaid assessments, costs and other amounts owed against the property. See attached Exhibit "**D**."

8. On September 27, 2011, Bridgewater issued a second Estoppel Certificate. By letter bearing the same date, Bridgewater responded to HUD's objections to the prior certificate and explained that the Subordination provision of its Declaration required Notice of Default prior to commencement of a foreclosure action and that it had not received such Notice. See attached Composite Exhibit "**E**."

9. HUD refused to pay the assessments due on the property and on May 16, 2012, the United States of America, brought an action on behalf of HUD, ("Plaintiff"), alleging that it is not liable for assessments on the property accruing prior to issuance of the Certificate of Title or any late fees, collection costs or other charges accruing thereafter.

## UNDISPUTED FACTS

Bridgewater is a Florida not-for-profit corporation that operates as a homeowners'

association pursuant to Florida Statutes Chapter 720 and is governed by its Declaration, its Bylaws, Articles of Incorporation and amendments thereto. The relevant portions of the governing documents are attached as Exhibit "**F**."

The Declaration was recorded on October 7, 2003. This case involves interpretation of two Sections of the Declaration. The first is Section 15.15, which provides:

> **15.15 Creation of the Lien and Personal Obligation**. Each Owner, by acceptance of a deed or instrument of conveyance for the acquisition of title to a Home, shall be deemed to have covenanted and agreed that the Assessments, and/or other charges and fees set forth herein**,** together with interest, late fees, costs and reasonable attorneys' fees and paraprofessional fees **at** all levels of proceedings including appeals, collections and bankruptcy, shall be a charge and continuing lien in favor of Association encumbering the Home and all personal property located thereon owned by the Owner against whom each such Assessment is made. **The lien is effective from and after recording a Claim of Lien in the Public Records stating the legal description of the Home, name of the Owner, and the amounts due as of that date, but shall relate back to the date that this Declaration is recorded.** The Claim of Lien shall also cover any additional amounts which accrue thereafter until satisfied. **Each Assessment, together with interest, late fees, costs and reasonable attorneys' fees and paraprofessional fees at all levels including appeals, collections and bankruptcy, and other costs and expenses provided for herein, shall be the personal obligation of the person who was the Owner of the Home at the time when the Assessment became due, as well as the Owner's heirs, devisees. personal representatives, successors or assigns.** (Emphasis added.)

Thus, the lien for assessments recorded on August 6, 2008 related back to the October 7, 2003 when the Declaration was recorded and has priority over the Wells Fargo mortgage absent a contrary provision in the Declaration. Such a provision is found in Section 15.16 which affords a limited exception from liability for subsequent acquirers of title who fall within its narrow parameters:

> **15.16 Subordination of the Lien to Mortgages**. The lien for Assessments shall be subordinate to bona fide first mortgages held by a Lender on any Home, if the mortgage is recorded in the Public Records prior to the Claim of Lien. The lien for Assessments shall not be affected by any sale or transfer of a Home, except in the event of a sale or transfer (by deed in lieu of foreclosure or otherwise) of a Home pursuant to a foreclosure of a bona fide first mortgage, in which event, the

acquirer of title, its successors and assigns, shall not be liable for Assessments encumbering the Home or chargeable to the former Owner of the Home which became due prior to such sale or transfer. However, any such paid Assessments for which such acquirer of title is not liable may be reallocated and assessed to all Owners (including such acquirer of title) as a part of Operating Costs included within Installment Assessments. Any sale or transfer pursuant to a foreclosure (by deed in lieu of foreclosure or otherwise) shall not relieve the Owner from liability for, nor the Home from the lien of, any Assessments made thereafter. Nothing herein contained shall be construed as releasing the party liable for any delinquent Assessments from the payment thereof, or the enforcement of collection by means other than foreclosure. **A Lender shall give written notice to Association if the mortgage held by such Lender is in default. Association shall have the right, but not the obligation, to cure such default within the time periods applicable to Owner. In the event Association makes such payment on behalf of an Owner, Association shall, in addition to all other rights reserved herein, be subrogated to all of the rights of the Lender.** All amounts advanced on behalf of an Owner pursuant to this Section shall be added to Assessments payable by such Owner with appropriate interest**. (Emphasis added.)

The Wells Fargo mortgage was insured by FHA. Paragraph 9(d) of the mortgage incorporates the Regulations of the HUD Secretary applicable to defaults and acceleration of the debt. Among those Regulations is *24 CFR, Section 203.602* which provides:

> 203.602 <u>Delinquency notice to mortgagor</u>**. The mortgagee shall give notice** to each mortgagor in default on a form supplied by the Secretary or, if the mortgagee wishes to use its own form, on a form approved by the Secretary, **no later than the end of the second month of any delinquency in payments under the mortgage . . .**

Bridgewater was not provided any notice of the Borrower/Owner's default before Wells Fargo filed the mortgage foreclosure action.

## MEMORANDUM OF LAW

**A.     SUMMARY JUDGMENT STANDARD**

This Court recently stated the standard to be applied to motions for summary judgment in *E\* Trade Secs., LLC v. Nash*, 2013 U.S. Dist. LEXIS 34250 (M.D. Fla. Mar. 12, 2013):

> The summary judgment procedure should not be regarded as a "disfavored procedural shortcut," but as an integral part of the Federal Rules that are designed "to secure the just, speedy and inexpensive determination of every action."

4

*Celotex Corp. v. Cattrell,* 477 U.S. 317, 327 (1986). To survive a motion for summary judgment, a plaintiff must come forward with significant probative evidence to demonstrate that a triable issue of fact exists. *See Baker v. McDonald's Corp.,* 686 F.Supp. 1474 (S.D. Fla. 1987), *aff'd*, 865 F.2d 1272 (11th Cir. 1988). More than a mere scintilla of evidence is necessary to survive a motion for summary judgment; "there must be substantial conflict in evidence to support a jury question." *Combs v. Plantation Patterns,* 106 F.3d 1519, 1526 (11th Cir. 1997) (*citing Carter v. City of Miami,* 870 F.2d 578, 581-82 (11th Cir. 1989), *cert. denied,* 522 U.S. 1045, 118 S.Ct. 685 (1998))."

The standard for summary judgments was also eloquently stated by this Court in *Bee's Auto, Inc. v. City of Clermont*, 2013 U.S. Dist. LEXIS 27573 (M.D. Fla. Feb. 28, 2013).

> Pursuant to Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary Judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In applying this standard, the Court must examine the materials on file and the record evidence "in the light most favorable to the nonmoving party." *Samples on Behalf of Samples v. Atlanta*, 846 F.2d 1328, 1330 (11th Cir. 1988). When faced with a "properly supported motion for summary judgment [the nonmoving party] must come forward with specific factual evidence, presenting more than mere allegations." *Gargiulo v. G.M. Sales, Inc*., 131 F.3d 995, 999 (11th Cir. 1997). The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. *Evers v. Gen. Motors Corp*., 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value").
>
> At the summary judgment stage the judge's function is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986). Some degree of factual dispute is expected, but to successfully counter a motion for summary judgment the factual dispute must "affect the outcome of the suit" and must be "such that a reasonable jury could return a verdict for the non-moving party." Id. at 248, 106 S. Ct.at.2510." *Bee's Auto, Inc. v. City of Clermont*, Case No. 5:11-cv-525-Oc-10PRL. (M.D. Florida, 2013).

**B.     THE DECLARATION IS A CONTRACT AND THE PARTIES ARE GOVERNED BY ESTABLISHED PRINCIPLES OF CONTRACT LAW**

The Declaration is a contract between a homeowners' association and its members. *Coral Lakes Community Association, Inc. v. Busey Bank*, 30 So.3d 579, 584 (Fla. 2d DCA 2010). When the terms of a contract are clear and unambiguous, the parties' intent must be gleaned from

the four corners of the document. *Levitt v. Levitt*, 699 So. 2d at 757; *see also Sheen v. Lyon*, 485 So. 2d 422, 424 (Fla. 1986) (stating that when the language of a contract "is clear and unambiguous a court cannot entertain evidence contrary to its plain meaning"). In such a situation, "the language itself is the best evidence of the parties' intent, and its plain meaning controls." *Richter v. Richter*, 666 So. 2d 559, 561 (Fla. 4th DCA 1995).

It is a recognized principle of contract law that courts may not rewrite a contract to interfere with the freedom of contract or substitute their judgment to relieve one of the parties from the apparent hardship of an improvident bargain. *Metro Development Group, L.L.C. v. Morris Keithdendale ,Inc.,* 941 So. 2d 11; 2006 Fla. App. Lexis 13029 *quoting Beach Resort Hotel Corp v. Wieder, 79 So. 2d 659, 663 (Fla. 1955)* "It is a cardinal principle of contract construction that the meaning to be attached to the language of an instrument is a question of law to be answered by the trial court where such language is clear, plain, certain, undisputed, unambiguous and susceptible to only a singular meaning or inference…. The paramount concern in construing contracts is the intention of the parties. . . .  The intent of the parties is derived from the language of the contract when such language is without ambiguity; however, if an ambiguity exists, parol evidence is properly admitted to resolve such ambiguity and explain the intention of the parties to the contract. *Royal Continental Hotels, Inc. v. Broward Vending, Inc.,* 404 So.2d 782, 783-84 (Fla. 4th DCA 1981) (citations omitted). . . . [T]he words the parties use to express their intent are construed in the light of the object which the parties had in view while employing those words. 53 *Am.Jur. 2d Mechanics' Liens, 293*.

Another well-settled principle of contract law is that a reasonable interpretation is preferred to one which is unreasonable, and an interpretation leading to an absurd conclusion must be abandoned for one more consistent with reason and probability. Where one

interpretation would lead to an agreement which is fair and equitable, while another interpretation would result in an unfair and inequitable agreement, the former must be selected. *Hunt v. First National Bank of Tampa* 381 So.2d 1194 (Fla. App. 2nd, 1980).

Consideration is another fundamental element of a contract. *See e.g, Med-Star Central, Inc. v. Psychiatric Hospitals of Hernando County, Inc*., 639 So.2d 636, 637 (Fla. 5th DCA 1994). A promise, no matter how slight, qualifies as consideration if the promisor agrees to do something that he or she is not already obligated to do." *Cintas Corp. No. 2 v. Schwalier*, 901 So.2d 307, 309 (Fla. 1st DCA 2005). On the other hand, "while parties unquestionably enjoy the freedom to limit their respective remedies under a contract, a contract must nevertheless be reasonable and must provide mutuality of obligation in order to be considered enforceable." *Hardwick Props., Inc. v. Newbern,* 711 So.2d 35, 38 (Fla. 1st DCA 1998); *Pick Kwik Food Stores, Inc. v. Tenser,* 407 So.2d 216, 218 (Fla. 2d DCA 1981). The requisite mutuality of contract entails consideration on both sides. See *Redington Grand, LLP v. Level 10 Props., LLC*, 22 So.3d 604, 608 (Fla. 2d DCA 2009), *rev. denied*, 32 So.3d 59 (Fla. 2010)..

**C.  BRIDGEWATER SHOULD BE GRANTED SUMMARY JUDGMENT BECAUSE WELLS FARGO BREACHED THE CONTRACT BY NOT PROVIDING NOTICE OF DEFAULT PRIOR TO FILING THE FORECLOSURE ACTION.**

Section 15.15 of the Declaration provides that all acquirers of title are liable for unpaid assessments and that the lien for such assessments relates back to the date the Declaration was recorded. The Declaration was recorded October 7, 2003. The Wells Fargo mortgage was recorded December 30, 2005. Generally, competing interests in land have priority in the order in which they are created;. *Argent Mortgage Co. v. Wachovia Bank, N.A., 52 So.3d 796, 799 (Fla. 5th DCA 2010), quoting Rambo v. Dickenson*, 92 Fla. 758, 110 So. 352, 353 (Fla. 1926); *See also, Morris v. Osteen*, 948 So.2d 821, 826 (Fla. 5th DCA 2007); *F.J. Holmes Equip., Inc. v.*

7

*Babcock Bldg. Supply, Inc.*, 553 So.2d 748, 750 (Fla. 5th DCA 1989) ("The first rule is that competing interests in land have priority in order of their creation in point of time"). Thus, unless another provision of the Declaration alters the general rule, when it was recorded on August 6, 2008, Bridgewater's lien related back to date its Declaration was recorded; trumped Wells Fargo's mortgage and rendered subsequent acquirers of title, including Plaintiff, liable for all charges assessed against the property.

But Plaintiff says Section 15.16 of the Declaration alters the general rule; subordinates Bridgewater's lien to the Wells Fargo mortgage; and shields subsequent acquirers of title from liability for unpaid assessments. Plaintiff seeks the benefit of the Subordination provision, without the burden of providing Bridgewater written notice of default before filing a foreclosure action. Plaintiff would have the Court ignore the plain language of Section 15.16 that required Wells Fargo to give written notice to Bridgewater if the mortgage held by such Lender was in default "within the time periods applicable to Owner". It eschews the provisions of its own regulations, contained in *24 CFR 203.602* establishing the manner and time period in which written notice of default must be given to FHA borrowers and therefore to Bridgewater pursuant to Section 15.16 of the Declaration.

Unfortunately for Plaintiff, Section 15.16 is clear and unambiguous and is not subject to different interpretations. Given its plain and ordinary meaning, it establishes a mutuality of obligations. Lenders who want the benefit of subordination must give the pre-foreclosure notice required by that Section. Likewise, a successor who seeks the benefit of that Section, is destined by its predecessor's failure to satisfy the notice requirement. Wells Fargo's failure to give written notice of default to Bridgewater prior to filing the foreclosure action is undisputed. The giving of such notice was the promise made by lenders in exchange for subordination and release

of liability offered by Section 15.16 of the Declaration. The notice was not given, so Bridgewater received no consideration for its promise to subordinate its lien and release acquirers of title from liability for unpaid assessments. That lack of consideration alone renders Section 15.16 unenforceable, leaving only Section 15.15 to govern the relationship of the parties. That Section renders all acquirers of title liable for unpaid assessments, including lenders who acquire title to the property and their successors.

D. **PRINCIPLES OF FAIRNESS DO NOT GOVERN INTERPRETATION OF A CONTRACTUAL PROVISION.**

It does not matter that a literal reading of the Declarations will disadvantage Plaintiff. A party is bound by, and a court is powerless to rewrite the clear and unambiguous terms of a voluntary contract. *Nat'l Health Laboratories, Inc. v. Bailmar, Inc.,* 444 So. 2d 1078, 1080 (Fla. 3d DCA). It is not the role of the court to make an otherwise valid contract more reasonable from the standpoint of one contracting party. *Stack v. State Farm Mut. Auto Ins. Co.,* 507 So. 2d 617, 619 (Fla. 3d DCA). Moreover, this principle applies even when contractual terms bind a party to a seemingly harsh or out of the ordinary bargain. *Barakat v. Broward County Hous. Auth.,* 771 So. 2d 1193, 1195 (Fla. 4th DCA 2000). It simply does not matter how unfair or unequal a contract is as long as intelligent parties entered into the agreement by free will. *Barakat v. Broward County Hous. Auth.,* 771 So. 2d 1193, 1195 (Fla. 4th DCA 2000).

Plaintiff will say it was not a party to the Declaration, so it should not be bound by the notice requirements of Section 15.16. But Plaintiff cannot have it both ways. It cannot claim to be a party to the Declaration and entitled to subordination in one breath and disclaim the provisions it does not like in the next breath. Furthermore, Plaintiff is not an innocent stranger to the mortgage transaction. It guaranteed the mortgage and authored the regulations applicable to notices of default. Then, it voluntarily took title to the property after the foreclosure was

completed. Like it or not, Plaintiff stands in the shoes of Wells Fargo and cannot escape its predecessor's undisputed failure to provide the notice of default that was the consideration needed to trigger the benefits of Section 15.16.

E.  ***CORAL LAKES* AND ITS PROGENY SUPPORT BRIDGEWATER'S RIGHT TO SUMMARY JUDGMENT.**

Plaintiff is expected to rely on *Coral Lakes Community Association Inc. v. Busey Bank, N.A.*, 30 So. 3d 579 (Fla. 2d DCA 2010). But, *Coral Lakes* enhances Bridgewater's position. Unlike the *Coral Lakes* Declaration, the Bridgewater Declaration provides that liens for assessments relate back to recording of the Declaration, giving them priority over subsequent mortgages. Rather than the carte blanche subordination provision found in the *Coral Lakes'* Declaration, the Bridgewater Declaration imposed a notice requirement on lenders. Both provisions of the Bridgewater Declaration fall squarely within the Court's observation that, "The HOA could have protected itself if, in drafting its Declaration, it had included language that its lien for unpaid assessments related back to the date the Declaration was recorded or that it otherwise had lien superiority over intervening mortgages". *Id.* at p. 584.

When it drafted its Declaration, Bridgewater did exactly what the Court said Coral Lakes should have done. To protect itself, Bridgewater included a "relation back" provision in Section 15.15 and a "notice of default" requirement in Section 15.16. As the Court also said in *Coral Lakes*,

> Restrictions found within a Declaration are afforded a strong presumption of validity, and a reasonable unambiguous restriction will be enforced according to the intent of the parties as expressed by the clear and ordinary meaning of its terms...." *Shields v. Andros Isle Prop. Owners Ass'n*, 872 So.2d 1003, 1005-06 (Fla. 4th DCA 2004) (quoting *Emerald Estates Cmty. Ass'n v. Gorodetzer*, 819 So.2d 190, 193 (Fla. 4th DCA 2002)).

*Coral Lakes,* (followed by *Ecoventure WGV, Ltd. v. Saint Johns Northwest Residential*

10

*Association, Inc.,* 56 So.3d 126 (Fla. 5th DCA 2011), hold that first mortgagees are third party beneficiaries of the Declaration and subsequent statutes cannot impair or supersede that established contractual relationship. Neither case stands for the proposition that a third party beneficiary can ignore contractual duties while still claiming a contractual benefit such as subordination. Certainly, neither case supports Plaintiff's attempt to distance itself from Wells Fargo's breach of the contractual notice requirement imposed by Section 15.16. If Plaintiff was damaged by its predecessor's breach of its contractual duties, its remedy lies against Wells Fargo, not Bridgewater.

Section 15.16 of the Bridgewater Declaration clearly required lenders who wish to claim the benefit of subordination to give Bridgewater written notice of default **before** they commence a foreclosure action. Pursuant to *Coral Lakes*, that provision is "afforded a strong presumption of validity". Wells Fargo was not duped into making the mortgage any more than Plaintiff was tricked into taking title to the property. Both entities are sophisticated third parties involved in the financing of countless properties. They voluntarily entered into a contractual relationship with Bridgewater. Failure to read the Declaration governing the property they financed and later acquired title to is not an excuse for breaching that contract. .

**F.    BRIDGEWATER IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S CLAIM FOR TORTIOUS INTERFERENCE**

Plaintiff's claim for tortious interference is premised on an unconsummated land sales contract with an unidentified buyer. The contract allegedly fell through because Bridgewater issued "improper" estoppel certificates.

The elements of a claim for tortious interference with a business relationship are: (1) a business relationship under which the plaintiff has legal rights; (2) knowledge of the relationship by the defendant; (3) an intentional and unjustified interference with that relationship by the

defendant; and (4) damage to the plaintiff as a result of interference with the business relationship. *See Bortell v. White Mountains Ins. Group, Ltd.*, 2 So. 3d 1041, 1048 (Fla. 4th DCA 2009). Because a tortious interference claim "exists only against persons who are not parties to the contractual relationship," the plaintiff must show that a "third party interfere[d] with a contract or business relationship by influencing, inducing or coercing one of the parties to the relationship to abandon the relationship or breach the contract, thereby causing injury to the other party. *West v. Troelstrup*, 367 So. 2d 253, 255 (Fla. Dist. Ct. App. 1979), *quoted in Cox v. CSX Intermodal, Inc.*, 732 So. 2d 1092, 1099 (Fla. Dist. Ct. App. 1999); A claim for tortious interference requires a showing of both an intent to damage the business relationship and a lack of justification to take the action that caused the damage. *Networkip, LLC v. Spread Enterps., Inc.*, 922 So. 2d 355, 358 (Fla. Dist. Ct. App. 2006). *Am. Color Graphics, Inc. v. Eckerd Corp.*, 2008 U.S. Dist. LEXIS 56588 (D. Fla. 2008).

In *Pantelakos v. Spadafora,* 2012 U.S. Dist. LEXIS 179460 (D. Fla. 2012), the court dismissed a claim for tortious interference as vague because Plaintiff did not identify any specific contract or business relationship with any named party, or demonstrate the Defendant's knowledge of or interference with any contract or relationship. Plaintiff's claim for tortious interference must fail because it has not identified the specific contract with which Bridgewater supposedly interfered. Nor has Plaintiff presented any evidence to show Bridgewater influenced or induced anyone to abandon the sales contract, much less that it intended to damage any business relationship.

Additionally, a claim for tortious interference requires a showing of both an intent to damage the business relationship and a lack of justification to take the action that caused the damage. *Networkip, LLC v. Spread Enterps., Inc.*, 922 So. 2d 355, 358 (Fla. Dist. Ct. App.

2006). Simply labeling the Bridgewater estoppel certificates "improper" does not satisfy either element. The certificates were requested by Plaintiff. Bridgewater responded with certificates "stating all assessments owed to the association by the parcel owner or mortgagee with respect to the parcel" as required by Section 720.30851, *Florida Statutes*. That statute does not require Bridgewater to agree with a third party's interpretation of the provisions of its Declaration. Bridgewater was justified in issuing the statutorily required estoppel certificates and did nothing to interfere with the sale. If the sale fell through, it was Plaintiff that chose to abandon the transaction instead of closing the sale and seeking a judicial determination of the meaning of Section 15.16.

## G. BRIDGEWATER IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S CLAIM FOR BREACH OF CONTRACT.

Plaintiff, through its predecessor Wells Fargo, breached the notice requirements of the Declaration. In *Anvil Mining Company v. Humble*, 153 U.S. 540, the Supreme Court said:

> Whenever one party is guilty of such a breach as is here attributed to the defendant, the other party is at liberty to treat the contract as broken and desist from any further effort on his part to perform; in other words, he may abandon it, and recover as damages the profits which he would have received through full performance. Such abandonment is not technically a rescission of the contract, but is merely an acceptance of the situation which the wrongdoing of the other party has brought about." *Roehm v. Horst*, 178 U.S. 1, 15 (U.S. 1900).

Bridgewater did not breach the contract. It merely accepted the situation created by the wrongdoing of Wells Fargo and sought to recover its damages. Thus, Count III of the Complaint must fail as a matter of law.

## CONCLUSION

There are no issues of material fact. Section 15.16 of the Declaration clearly and unambiguously requires lenders to provide Bridgewater written notice that a homeowner has defaulted on their mortgage within the time period applicable to the owner. *24 CFR, Section*

13

*203.602 clearly* requires lenders to give FHA borrowers and therefore Bridgewater written notice of default before they file a foreclosure action. Wells Fargo did not provide notice of default to Bridgewater before it filed the foreclosure action. By failing to do so, it deprived Bridgewater of contractual rights that were an integral part of the consideration for its promise to release a limited category of owners from liability for unpaid assessments. The Declaration is recorded and Wells Fargo, as well as Plaintiff, had actual or constructive knowledge of its provisions when they voluntarily acquired title to the property. Fairness is not the governing principle of contract interpretation. If it were, enforcing one clause of Section 15.16 for the benefit of Plaintiff and refusing to enforce another clause of that same Section included for the protection of the Community would certainly be unfair. Moreover, the interpretation urged by Plaintiff would lead to the absurd conclusion that the notice requirement of Section 15.16 is meaningless. An interpretation that leads to an absurd conclusion must be abandoned for one more consistent with reason and probability. *Hunt v. First National Bank of Tampa* 381 So.2d 1194 (Fla. App. 2nd, 1980). The drafter's desire to include language in the Declaration to protect the Community from financial loss while protecting compliant lenders is far more consistent with reason and probability than the conclusion urged by Plaintiff.

The Court should reject Plaintiff's efforts to claim a contractual benefit where the mutual obligation imposed by Section 15.16 has not been satisfied, find that Section 15.16 of the Declaration is not applicable to the dispute between the parties and hold Plaintiff responsible for all assessments, interest, late fees, costs and other charges against the property as provided in Section 15.15 of the Declaration.

**WHEREFORE,** Defendant/Counter-Plaintiff, Bridgewater Community Association, Inc. prays for summary judgment declaring as follows:

A. That Wells Fargo breached the provisions of Section 15.16 of the Declaration by failing to provide Bridgewater written notice of the owner's default prior to filing a foreclosure action;

B. That the breach by Wells Fargo precludes Plaintiff or any other successor in interest from enforcing the subordination and release provisions of Section 15.16 against Bridgewater;

C. That Plaintiff owes Bridgewater assessments and other charges in accordance with the provisions of Section 15.15 of the Declaration;

D. Ordering Plaintiff to pay Bridgewater assessments and other charges in the amount of $16,058.57.

E. Awarding Bridgewater its costs, expenses, and reasonable attorneys' fees pursuant to Article 15.18 of the Declaration and Florida Statute § 720.305(1); and

F. Awarding such other relief as the Court deems just and appropriate.

Respectfully Submitted,

*/s/ Mitchell L. Feldman*
MITCHELL L. FELDMAN
Florida Bar No.: 0080349
MFeldman@ffmlawgroup.com
**FELDMAN MORGADO P.A.**
501 North Reo Street
Tampa, Florida 33609
Tele: (813) 639-9366
Fax: (813) 639-9376
Attorneys for Defendant

## CERTIFICATE OF SERVICE

I hereby certify that on the 15th day of April 2013 a true and correct copy of the foregoing Motion for Summary Judgment was filed using the Court's CM/ECF electronic filing system,

which will forward a Notice of this filing to all parties in interest.

*/s/ Mitchell L. Feldman*
MITCHELL L. FELDMAN
Florida Bar No.: 0080349