IN THE UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA                    )
                                            )
                                            ) Case No. 12-cv-01087-JSM-TGW
            Plaintiff,                      )
                                            )
v.                                          )
                                            )
BRIDGEWATER COMMUNITY                       )
ASSOCIATION, INC.                           )
                                            )
            Defendant.                      )
                                            )

**PLAINTIFF'S RESPONSE AND MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff, UNITED STATES OF AMERICA ("USA"), by and through its undersigned

counsel files this, its Response in Opposition to Defendant's Motion for Summary Judgment and

will show this Court the following:

**I. INTRODUCTION**

This is as an action filed by the United States of America on behalf of the Department of

Housing and Urban Development (HUD) against the Bridgewater Community Association.

(Association). HUD became the owner of property within the Bridgewater Community by

insuring a mortgage which the prior lender foreclosed. Once the lender foreclosed and obtained

title to the property, the lender, pursuant to the National Housing Act, applied for and obtained

insurance benefits from HUD. As a result of paying those benefits, HUD accepted a deed for the

property.

Properties in the Association are obligated to pay periodic Association maintenance fees.

Since HUD obtained title, it has been trying to sell the subject property but has been unable to do

so because the Association refuses to provide the correct balance owed for past due Association maintenance fees. Instead, the Association provides a balance inclusive of amounts which were discharged as a result of a prior foreclosure, a variety of fees unauthorized by its own governing documents, excessive "capital contribution" fees, and several "individual assessments" improperly taxed against Plaintiff's property.

Although many facts in this case are undisputed according to the public records of Pasco County, several key facts are in dispute which precludes summary judgment from being granted.

## II. ADMITTED AND UNDISPUTED FACTS AS ALLEGED IN THE COMPLAINT

1.      Defendant, Bridgewater Community Association, Inc. ("Bridgewater" or "Association"), is a Florida not-for-profit corporation operating within Pasco County, Florida such that the Court has personal jurisdiction over Bridgewater. [D.E. 3, ¶1]

2.      The Defendant Association is the entity charged with the maintenance and operation of the Bridgewater community in Pasco County, Florida. It operates pursuant to Florida Statutes Chapter 720 and is governed by its Declaration of Covenants and Restrictions for Bridgewater ("Declaration"), its Bylaws, Articles of Incorporation, and any amendments thereto. [D.E. 1, ¶5]

3.      The Declaration for Bridgewater was recorded on October 7, 2003 in the Official Records of Pasco County, Florida Book 5574, Page 934 and contains a provision titled "Assessments" which provides in pertinent part:

> 15.16 Subordination of the Lien to Mortgages. The lien for Assessments shall be subordinate to bona fide first mortgages held by a Lender on any Home, if the mortgage is recorded in the Public Records prior to the Claim of Lien. **The lien for Assessments shall not be affected by any sale or transfer of a Home, except in the event of a sale or transfer (by deed in lieu of foreclosure or otherwise) of a Home pursuant to a foreclosure of a bona fide first mortgage, in which event, the acquirer of title, its successors and assigns, shall not be liable for Assessments encumbering the Home or chargeable to the former Owner of the Home which became due prior to such sale**

**or transfer. However, any such unpaid Assessments for which such acquirer of title is not liable may be reallocated and assessed to all Owners (including such acquirer of title) as a part of Operating Costs included within Installment Assessments.** Any sale or transfer pursuant to a foreclosure (by deed in lieu of foreclosure or otherwise) shall not relieve the Owner from liability for, nor the Home from the lien of, any Assessments made thereafter. Nothing herein contained shall be construed as releasing the party liable for any delinquent Assessments from the payment thereof, or the enforcement of collection by means other than foreclosure. **A Lender shall give written notice to Association if the mortgage held by such Lender is in default. Association shall have the right, but not the obligation, to cure such default within the time periods applicable to Owner.** In the event Association makes such payment on behalf of an Owner, Association. shall, in addition to all other rights reserved herein, be subrogated to all of the rights of the Lender. All amounts advanced on behalf of an Owner pursuant to this Section shall be added to Assessments payable by such Owner with appropriate interest. [D.E. 1, ¶6] (emphasis added)

4.    On December 8, 2005, Wells Fargo Bank, N.A. issued a mortgage which encumbered property located at 31132 Masena Drive, Wesley Chapel, Florida 33544, legally described as:

> Lot 11, Block 10, BRIDGEWATER PHASE 1 and 2, according to the Plat thereof as recorded in Plat Book 48, Page 110, of the Public Records of Pasco County, Florida, and any subsequent amendments thereto.

("Property"). The Property is located within Bridgewater. [D.E. 1, ¶8]

5.    The mortgage was recorded on December 30, 2005 in the Official Records of Pasco County Florida in Book 6773 at Page 353. [D.E. 1, ¶9]

6.    On February 12, 2010, Wells Fargo Bank, N.A. obtained a foreclosure judgment as to its mortgage and the Property was sold at foreclosure auction where Wells Fargo Bank, N.A. was the successful bidder. (Although Defendant denied this allegation, the judgment, Certificate of Sale and Certificate of Title were attached to the Complaint. [D.E. 1, ¶10]. The judgment, on page 3, provides that the property is sold free and clear of any claims of the defendants except assessments pursuant to Florida Statute Sections 718.116 and 720.3085. the judgment further provides that upon filing the Certificate of Title, all Defendants are foreclosed

of all claims in the Property.

7.     On May 26, 2010, a Certificate of Title was issued to Wells Fargo Bank, N.A. such that it became the owner of the Property as a result of the foreclosure. A copy of the Certificate of Title was recorded in the Official Records of Pasco County Book 8343, Page [D.E. 1, ¶11]. On June 17, 2010, HUD obtained title to the property from Wells Fargo.

8.     On July 1, 2011 in response to an estoppel request[1] sent by HUD, Bridgewater, through counsel, sent an Estoppel Certificate with a payoff of $10,181.64. [D.E. 1, ¶14]

9.     The Estoppel Certificate sought to collect assessments and other amounts owed against the Property prior to February 12, 2010 and prior to Wells Fargo obtaining its Certificate of Title on May 26, 2010 as well as legal fees and costs, accrued interest, and a variety of other undocumented charges. The property is subject to **annual** assessments of $250 per year, rather than monthly or quarterly assessments. [D.E. 1, ¶15]. HUD argues that, in accordance with the foreclosure judgment, it is only liable for assessments which came due after May 26, 2010.

10.    On September 27, 2011, in response to another estoppel request sent by HUD, BRIDGEWATER, through counsel, sent an Estoppel Certificate with a payoff of $12,677.27. [D.E. 1, ¶16]

11.    Bridgewater through its Estoppel Certificate has asserted that HUD is liable for paying all assessments which accrued against the Property *prior* to May 26, 2010 when Wells Fargo took title, along with all interest, late fees, attorney fees, and other charges chargeable as to the assessment delinquency and the legal fees and costs which Bridgewater incurred in collection attempts from the prior owner. [D.E. 1, ¶17]

---

[1] An estoppel is a certificate signed by an officer or authorized agent of the association stating all assessments and other moneys owed to the association by the parcel owner or mortgagee with respect to the parcel. Florida Statutes §720.30851 authorizes an estoppel certificate and contains a procedure for obtaining one.

12.    In the instant case, Bridgewater's Declaration has been in effect since 2003.

13.    A dispute has arisen between USA and Bridgewater as to whether HUD is liable for any assessments, interest, late fees, legal fees or costs and non-litigation fees and costs which accrued prior to Wells Fargo taking title on May 26, 2010 and what is HUD's liability, if any, to Bridgewater. [D.E. 1, ¶23]

### III. DISPUTED ISSUES OF FACT

1.    The amount of assessments due on HUD's property; whether HUD is liable for:

      a.    Assessments, special assessments, late fees, interest, or any other amounts which came due *prior* to May 26, 2010 and which were foreclosed by the Wells Fargo foreclosure judgment; [D.E. 1, ¶16 and 17]

      b.    "Individual Assessments" totaling $6,465.00 including $600.00 for a mailbox and $2500.00 for repainting a structure, and whether those charges were properly noticed and assessed; [D.E. 1, ¶16 and 17]

      c.    "Association Transfer Fees", and whether the Association has the authority to assess for same; [D.E. 1, ¶16 and 17]

      d.    The amounts of "Association Capital Contribution Fees", and whether the Association has the authority to assess same upon foreclosure; [D.E. 1, ¶16 and 17]

      e.    The amounts of "Estoppel Fees", "Estoppel Certificate Fees", and whether the Association has the authority to assess for same; [D.E. 1, ¶16 and 17]

      f.    $800 for three "Legal Responses"; [D.E. 1, ¶16 and 17]

2.    Whether the Association received notice of the defaulted mortgage; [D.E. 37, ¶14]

3.    Whether the Association tortuously interfered with the sale HUD had pending on

the subject property, thereby causing the buyer to abandon the transaction.

## IV. ARGUMENT AND MEMORANDUM OF LAW

### A. THE ASSOCIATION CANNOT COLLECT ANY AMOUNTS THAT WERE DISCHARGED BY THE FEBRUARY 12, 2010 FORECLOSURE JUDGMENT

The Wells Fargo foreclosure judgment entered on February 12, 2010 and recorded on March 11, 2010 foreclosed any prior amounts owed on the subject property. The Association's Motion fails to acknowledge the effect of the default entered against it and the foreclosure judgment. Plaintiff raised this exact issue as an affirmative defense to the Association's counterclaim:

> To the extent Defendant had any claim for pre-certificate of title expenses, it waived its claim by failing to file an answer and affirmative defense to the foreclosure action brought by Wells Fargo which resulted in a default being entered against it.

The Association failed to rebut same, the foreclosure judgment clearly forecloses the Association's lien, and thus summary judgment in favor of the Association must be denied. *CFBP, LLC v. U.S. Bank, Nat. Ass'n*, 800 F. Supp. 2d 1169, 1182 (M.D. Fla. 2011). The foreclosure judgment provides:

> The lien of the Plaintiff [Wells Farco] is superior in dignity to any right, title, interest, or claim of the Defendants and all persons, corporations, and other entities claiming by, through, or under the defendants or any of them and the property will be sold free and clear of all claims of the defendants, with the exception of any assessments that are superior to Sections 718.116 and 720.3085, Florida Statutes.

Florida Statute Section 718.116 is inapplicable as the subject property is not a condominium, but Florida Statute Section 720.3085(c) provides:

> (c) Notwithstanding anything to the contrary contained in this section, the liability of a first mortgagee, or its successor or assignee as a subsequent holder of the first mortgage who acquires title to a parcel by foreclosure or by deed in lieu of foreclosure for the unpaid assessments

that became due before the mortgagee's acquisition of title, shall be the lesser of:

1.    The parcel's unpaid common expenses and regular periodic or special assessments that accrued or came due during the 12 months immediately preceding the acquisition of title and for which payment in full has not been received by the association; or

2.    One percent of the original mortgage debt.

The limitations on first mortgagee liability provided by this paragraph apply only if the first mortgagee filed suit against the parcel owner and initially joined the association as a defendant in the mortgagee foreclosure action. Joinder of the association is not required if, on the date the complaint is filed, the association was dissolved or did not maintain an office or agent for service of process at a location that was known to or reasonably discoverable by the mortgagee.

It is undisputed that the Association was joined in the foreclosure action and that the Wells Fargo mortgage was a first mortgage. See, Affidavit of Steven M. Davis. Thus, to the extent the Association *had* any lien pursuant to Section 15.16 of its Declaration, same was foreclosed by the foreclosure judgment and Florida Statute Section 720.3085(c). *AG Grp. Investments, LLC v. All Realty Alliance Corp.*, 106 So. 3d 950, 952 (Fla. 3 DCA 2013), reh'g denied (Mar. 5, 2013). As the Association assesses annually, the only amount which could possibly survive the foreclosure judgment was the 2011 annual assessment of $250.00. Interest, late fees, attorney fees, 2008 assessments, 2008 special assessments, 2009 assessments, 2010 assessments, and any undated amounts which accrued prior to Wells Fargo's acquisition of title are foreclosed by judgment regardless of Wells Fargo's compliance with the notice provision in the Declaration. However, as indicated below, Wells Fargo did comply.

**B.    WELLS FARGO COMPLIED WITH THE ASSOCIATION'S DECLARATION SECTION ON MORTGAGEE NOTICE**

**1. The Notice Language Within the Association's Declaration is not a Condition Precedent To The Filing of a Mortgagee's Foreclosure Action**

The Defendant asserted that Plaintiff is barred from pursuing this action because it "breached" the Association's Declaration by failing to comply with the "condition precedent"

LAW OFFICES
BECKER & POLIAKOFF, P.A.
121 ALHAMBRA PLAZA, 10TH FLOOR · · CORAL GABLES, FL 33134
TELEPHONE (305) 262-4433

within Section 15.16. Because of this alleged "breach", Defendant proclaims that it is entitled to summary judgment in its favor.

A review of Section 15.16 reveals no language requiring *pre-suit* notice that a loan is in default. The Section states: *"a lender shall give written notice to Association if the mortgage held by such lender is in default. Association shall have the right, but not the obligation to cure such default within the time periods applicable to the owner."*

Additionally, Defendant argues that the purported failure to comply with the notice requirement of Section 15.16 should serve as a breach of the Declaration and the mortgagee should be penalized by being barred from receiving the lien subordination privileges, and "Safe Harbor" protection, as specified in the Section. The Declaration contains no such penalty and no other language exists within the Section or the entire Declaration that would suggest that if the lender had failed to give the required "notice" that it would be barred from receiving the subordination privileges and specified Safe Harbor protection. Rather, Defendant would still need to prove damages actually caused by the lender's breach. The Association's Motion is devoid of any such proof. And for good reason; there is no such proof. Given the high amount of the mortgage and the lower value of the property, no Association would want to cure such a defaulted mortgage.

Further, pursuant to Florida Statute Section 45.0315, the Association had the right to cure the default and redeem the property, but it chose not to do so:

> At any time before the later of the filing of a certificate of sale by the clerk of the court or the time specified in the judgment, order, or decree of foreclosure, the mortgagor or the holder of any subordinate interest may cure the mortgagor's indebtedness and prevent a foreclosure sale by paying the amount of moneys specified in the judgment, order, or decree of foreclosure, or if no judgment, order, or decree of foreclosure has been rendered, by tendering the performance due under the security agreement, including any amounts due because of the exercise of a right to accelerate, plus the reasonable expenses of proceeding to

foreclosure incurred to the time of tender, including reasonable attorney's fees of the creditor. Otherwise, there is no right of redemption.

Thus, to the extent Wells Fargo breached, the Association was not damaged.

Under Florida law, damages are an essential element of an action for breach of contract. *Rollins, Inc. v. Butland,* 951 So.2d 860, 876 (Fla. 2d DCA 2006). An award of damages for breach of contract is intended to place the injured party in the position he or she would have been in had the breach not occurred. *Sharick v. S.E. Univ. Health Sci., Inc.,* 780 So.2d 136 (Fla. 3d DCA 2000). A party injured by breach of contract is entitled to recover those damages that "naturally flow from the breach and can reasonably be said to have been contemplated by the parties at the time the contract was entered." *Mnemonics, Inc. v. Max Davis Assocs., Inc.,* 808 So.2d 1278, 1280 (Fla. 5th DCA 2002) (*citing Scott v. Rolling Hills Place, Inc.,* 688 So.2d 937, 940 (Fla. 5th DCA 1996)).

*Siever v. BWGaskets, Inc.,* 669 F. Supp. 2d 1286, 1300 (M.D. Fla. 2009).

The Association offers no evidence as to its damages. Significantly, as indicated herein, Wells Fargo did not breach the Declaration, the Association was provided notice of the defaulted mortgage, and the Association could have cured the defaulted mortgage had it desired to do so. Therefore Defendant's request for summary judgment on this issue must fail.

**2. The Association Was Given Proper Notice of the Foreclosure Action When Wells Fargo Filed Its Lis Pendens and Served the Association With Its Foreclosure Complaint**

    **a.**    **The Association Received Actual Notice-Service of Process**

It is a well established principle of law that the filing of suit to foreclose on a property operates as **notice** of the lender's election to accelerate, where the election to do so is declared in the complaint. *Liles v. Savage,* 121 Fla. 83 (Fla. 1935). In *Liles,* the Defendant was contesting the lender's ability to accelerate, and declare all amounts due and owing, when the he defaulted in the payment of interest and taxes. The Florida Supreme Court held that this type of default was sufficient to trigger acceleration and noted that the filing of the lawsuit to foreclose operated as notice to the mortgagor of the election to accelerate. *Id.*

The filing of suit for foreclosure amounts to exercise of the option of the mortgagee to declare the whole of the principal sum and interest secured by the mortgage due and payable. *Prince v. Mahin*, (1917) 73 Fla. 525, 74 So. 696; *Gus' Baths v. Lightbown*, (1931), 101 Fla. 1205, 1211, 133 So. 85, 135 So. 300; *Liles v. Savage*, (1935) 121 Fla. 83, 163 So. 399. And the **filing of suit to foreclose operates as notice** to the mortgagor of the election to accelerate, where the election to do so is declared in the complaint (as was done in this case) or, in the absence of such declaration, where the complaint on its face shows that foreclosure for the entire mortgage indebtedness is sought therein. *Liles v. Savage*, supra.

*Campbell v. Werner*, 232 So. 2d 252, 254 (Fla. 3rd DCA 1970) (emphasis added).

Here, the Association argued that Wells Fargo failed to provide it with <u>any</u> type of notice regarding the borrowers' default in their loan payments, and thus Wells Fargo violated Section 15.16 of the Declaration. However, it is undisputed that the Association was a named defendant in the Wells Fargo state court foreclosure action. Specifically, the Association was served with the foreclosure complaint on May 6, 2008, and was provided with an opportunity to respond. The Association failed to respond and was defaulted. [D.E. 15-2]. A true and correct copy of the State Court action docket is attached to counsel's Affidavit. The docket verifies that Association was served with the initial foreclosure complaint.

Thus, contrary to the Association's assertion, it <u>was</u> provided with adequate notice of the defaulted mortgage. For this reason alone, Association's Motion for Summary Judgment must be denied.

**b.    The Association Received Constructive Notice-Lis Pendens**

Prior to the filing of a foreclosure lawsuit in the state of Florida, it is a generally accepted practice to file within the official records of the particular county a "notice of lis pendens". The filing of a notice of lis pendens serves to protect the interests of a lien claimant by giving *constructive notice* of the claim of lien when actual notice has not been given. *Adhin v. First Horizon Home Loans*, 44 So.3d 1245 (Fla. 5th DCA 2010); *Westburne Supply, Inc. v. Community*

*Villas Partners, Ltd.*, 508 So.2d 431 (Fla. 1st DCA 1987)(a notice of lis pendens serves as constructive notice of the claims asserted against the property in the pending litigation).

On March 6, 2008, before filing its foreclosure action against the former homeowners, Wells Fargo Bank, N.A. filed its Notice of Lis Pendens in OR Book 7782, Page 880, of the Official Records of Pasco County, Florida. This written notice placed all interested parties on constructive notice that there had been a default in the payment of monetary obligations due to Wells Fargo and that Wells Fargo intended to pursue a foreclosure action to protect its interest in the subject property.

Defendant relies on Section 15.16 of its Declaration which asserts that a lender must give it "written notice" if a mortgage held by the lender goes into default. Although said notice must be written and not verbal, the type of notice (i.e. actual, constructive, etc.) is not specified. Because said term, "notice", is ambiguously written within the Association's Declaration, the term must be construed against the drafter, Defendant Association. *American K-9 Detection Services, Inc. v. Cicero,*100 So.3d 236 (Fla. 5th DCA 2012)(to the extent any ambiguity exists in a contract, it will be strictly construed against the drafter).

Assuming *arguendo* that this Court finds, contrary to Plaintiff's arguments that the "notice" language within the Association's Declaration serves as a condition precedent to the filing of a mortgagee's foreclosure action, Defendant's notice arguments must still fail. Here, Wells Fargo recorded a notice of lis pendens in the public records of Pasco County. By virtue of this recording, the Association was placed on constructive notice that Wells Fargo was going to file a mortgage foreclosure action against the homeowners due to their failing to pay all required monies due and owing under the note and mortgage.

c.    **24 CFR 203.602 is Inapplicable**

The Defendant's reliance on the notice requirements within *24 CFR 203.602* is misguided and too late. The Wells Fargo foreclosure judgment entered on February 12, 2010 and recorded on March 11, 2010 foreclosed any prior amounts owed on the subject property. Additionally, 24 CFR 203.602 only applies to the relations between the mortgagee and the government:

> It is well established that the "NHA and the [HUD] regulations promulgated thereunder deal only with the relations between the mortgagee and the government, and give the mortgagor no claim to a duty owed nor remedy for failure to follow." *Leggette v. Washington Mut. Bank, FA,* No. 3:03–CV–2909–D, 2005 WL 2679699, at *3 (N.D.Tex. Oct.19, 2005) (Fitzwater, C.J.) (quoting *Roberts v. Cameron–Brown Co.,* 556 F.2d 356, 360 (5th Cir.1977)).

**C.    PLAINTIFF IS A PROPER PARTY TO THE ASSOCIATION DECLARATION AND MAY PROPERLY RELY ON THE *CORAL LAKES* DECISION**

Defendant argues that pursuant to *Coral Lakes Community Ass'n, Inc. v. Busey Bank, N.A.,* 30 So.3d 579 (Fla. 2d DCA 2010), all restrictions found within its Declaration are afforded a strong presumption of validity. Defendant argues that Section 15.16 of the Declaration required Wells Fargo to provide notice of the prior owners' default and because it "failed" to do so, it should not be afforded the lien subrogation/limited liability protections referenced in the Section. Section 15.15 does not provide the penalty that Defendant suggests.

*Coral Lakes* involved property owners who executed a note and mortgage in favor of Busey Bank in 2006. *Id.* at 581. The governing documents of the community subordinated the Association's assessment lien to that of a first mortgage and further provided that the foreclosing lender and its successors and assigns shall not be liable for *any* assessments or other moneys owed to Coral Lakes by the former owner. *Id.* In the instant case, this issue amounts to $280.00 as pursuant to Florida Statute Section 720.3085(c), 12 months of assessments is only $280.00.

In *Coral Lakes,* Busey Bank foreclosed the delinquent mortgage and named the

Association as a Defendant. The Association responded and raised as an affirmative defense that the purchaser at the foreclosure sale, including the bank, would be liable for twelve months of assessments or one percent of the mortgage, whichever is less, pursuant to Section 720.3085, F.S. *Id.* at 582. The Court rejected the Association's defense and held that the Declaration language controls over the statute and absolved the bank from *any* liability for past due amounts on the property.

Here, Wells Fargo <u>did comply</u> with the Association's Declaration, as it provided adequate notice of the prior homeowners' default to the Association via its foreclosure complaint and lis pendens, as argued above. But even if Wells Fargo failed to comply, such argument should have been made in the State Court prior to entry of the foreclosure judgment and prior to the Association's lien being foreclosed. Pursuant to the *Rooker-Feldman* Doctrine[2], this court can not now alter that judgment.

*Coral Lakes* stood for the sole position that an unambiguous declaration provision should be afforded a strong presumption of validity and Section 15.16 clearly limits the liability of the Plaintiff here.

Based on this limited liability, provided for in Section 15.16, on June 17, 2010, when HUD took title, the Association improperly attempted to collect delinquent assessments dating back to the fourth quarter of 2008. [D.E 1, ¶15] Pursuant to Article 15.16 of the Association's Declaration, and the foreclosure judgment, HUD was only liable to the Association for assessments which came due subsequent to May 26, 2010, when Wells Fargo, the first mortgagee, obtained the Certificate of Title to the property, as Wells Fargo's liability as former owner was similarly limited to assessments which accrued subsequent to the issuance of the

---

[2] *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

LAW OFFICES
BECKER & POLIAKOFF, P.A.
121 ALHAMBRA PLAZA, 10TH FLOOR · · CORAL GABLES, FL 33134
TELEPHONE (305) 262-4433

Certificate of Title.

## D. DEFENDANT TORTIOUSLY INTERFERED WITH PLAINTIFF'S BUSINESS RELATIONSHIP CAUSING SUBSTANTIAL FINANCIAL DAMAGE

To successfully pursue a claim for tortious interference with a business relationship, a moving party must prove (1) the existence of a business relationship under which the plaintiff has legal rights; (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with that relationship by the defendant; and (4) damage to the plaintiff as a result of the breach of the business relationship. *Tamiami Trail Tours, Inc. v. Cotton, 463 So.2d 1126* (Fla.1985).

Here, all of the above mentioned elements were in existence and properly plead by the Plaintiff in the Complaint. Once acquiring title to the subject property at issue, Plaintiff began to market the property and had a sales contract with potential third party purchaser Richard Klein, Jr. See Losurdo Deposition, Page 24. The Association was aware of this potential sale, as Plaintiff had previously placed the Association on notice of same by requesting estoppel letters. Because of the Association's inflated demands, and after HUD extended the closing date seven times, the sale fell through. Losurdo deposition, Page 25-26, 30-31; Losurdo Affidavit.

Because Plaintiff could not obtain proper estoppel figures from the Association, it could not properly close on the sales contract for the subject property and the potential purchaser ultimately walked away. Losurdo deposition, Page 25-26, 30-31. As a result of the Defendant's actions (i.e. failure to provide accurate estoppel figures) Plaintiff was damaged in the form of lost sale proceeds, extra property maintenance costs, and the legal expenses associated with the filing of this lawsuit. Defendant's Motion for Summary Judgment on the Tortious Interference Count must fail.

### E. WELLS FARGO NEVER BREACHED THE NOTICE PROVISION OF THE ASSOCIATION'S DECLARATION

In its final section of its Motion for Summary Judgment, the Defendant asserts that it must be awarded judgment as to Count III of the Complaint (Breach of Contract) because Plaintiff, through its predecessor, Wells Fargo, breached the Declaration and therefore Plaintiff can not properly assert a claim for breach of contract against the Association. This argument must fail, as the Association's sole breach argument relies on the notice provision of Section 15.16 of the Declaration, which argument was already foreclosed by the February 10, 2010 foreclosure judgment. Finally, as argued above, Wells Fargo did provide adequate notice as required by the Association's Declaration.

### F. DEFENDANT HAS FAILED TO PROVIDE ANY ADMISSIBLE EVIDENCE IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AS TO THE AMOUNTS CLAIMED IN ITS ESTOPPEL LETTER

In order for a court to rule in favor of a moving party at the summary judgment stage, admissible evidence must be filed in support of the motion. See *Presbyterian Church Of Sudan v. Talisman Energy, Inc.*, 582 F.3d 244 (2d Cir. 2009)(holding that only admissible evidence will be considered by the trial court in ruling on a motion for summary judgment). To prevail at summary judgment, no issues of material fact can exist. Pursuant to Fed. R. Civ. P. 56(c), a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

All Counts within the Complaint and Counterclaim involve the question of whether the Plaintiff is entitled to the lien subrogation benefits of Section 15.16 of the Association's Declaration. Additionally, Paragraphs 15 of the Complaint references and attaches the Association's estoppel letter including undocumented charges. The Association failed to produce any documentation setting forth the documentation for its authority to charge these line items: Liens; Quarterly Assessments from 2008-2011; Special Assessment Charges; Late Fees; Multiple undated "Individual Assessment" Charges (encompassing various repairs and modifications made to the property); Inspection Fees; Transfer Fees; Capital Contribution Fees; Defendant has not provided any proof that the above charges are valid and properly due and owing. In fact, a review of the Foreclosure Judgment demonstrates that Wells Fargo paid a variety of the lawn care fees; the same fees the Association now seeks to collect. Moreover, the Affidavit of Magda Nino, HUD's contractor attests to HUD's maintenance of the property, deeming such charges unnecessary.

Further, pursuant to Article 19.2 of the Declaration, the Association must provide reasonable written notice prior to performing maintenance on a property.

> ...[the] Association, where applicable, after reasonable prior written notice, shall have the right through its agents and employees, to cure the breach, including, but not limited to, the right to enter upon the Home and/or Homes and causing the default to be remedied and/or the required repairs or maintenance to be performed, or as the case may be, remove unauthorized improvements or modifications. The cost thereof ...shall be assessed against the Owner as an Individual Assessment.

Further, Article 19.3 requires seven days written notice before the Association can exercise self-help. No such notice to HUD was provided. See: Affidavit of Magda Nino.

The "Resale Capital Contribution" fee set forth in Article 15.12 of the Declaration is only chargeable on a conveyance of an ownership interest by an Owner. The Association's attempt to

extract this fee as a result of a foreclosure is unsupported by its own Declaration. Additionally, Article 7.2 governs transfer of ownership interests. Nowhere in that Article is there authorization for a "Transfer Fee", yet the Association seeks to collect three of them from HUD, at $250 each.

Defendant has also failed to provide any proof as to when the additional fees (i.e. late fees, interest, etc.) were assessed and it is indeterminable if they were assessed prior to the Certificate of Title, or after.

In order to prevail, "a homeowners association is obligated to show that it has properly levied the assessment in accordance with the community's declaration of restrictive covenants and by-laws when the defendant challenges the lack of compliance "specifically and with particularity." *Berg v. Bridle Path Homeowners Ass'n, Inc.*, 809 So. 2d 32, 34 (Fla. 4th DCA 2002). Here, HUD specifically challenged the assessments. The Association cannot demonstrate a proper levy as it has attempted to collect undocumented charges and the full amount of past due assessments, rather than the limitation for first mortgagees set forth in its own Declaration and in accordance with the foreclosure judgment.

> What can be gleaned from this record is that the association and its accounting methods were woefully inadequate to correctly ascertain and give notice of the amounts claimed to be due. Because of this imperfect record-keeping, the association did not make a proper claim of lien, nor did it give sufficient notice in its complaint of its claim. Had it done so, in all likelihood this case would not have even been filed.

*Saar v. Wellesley at Lake Clarke Shores Homeowners Ass'n, Inc.*, 68 So. 3d 417, 419-20 (Fla. 4th DCA 2011).

In *Saar*, the claim of lien was not only incorrect but overstated the amount due. *Id.* at 419. The Court reversed a final judgment in favor of the Association and remanded the case for entry of judgment in favor of the homeowner. The instant case is no different. HUD acknowledges that it would be responsible for assessments that came due subsequent to the

issuance of the Certificate of Title, but disputes the prior foreclosed amounts. To the extent Defendant had any claim for pre-certificate of title expenses, such was foreclosed.

Although the Declaration of Mark Spector [DE 37] was filed in support of its Motion for Summary Judgment, it is devoid of details to support the charges being assessed against HUD. In fact, the estoppel letters seek undated charges and "Individual Assessments" which HUD disputes. Those letters also seek amounts which were foreclosed by the Wells Fargo foreclosure judgment. In essence, no estoppel certificates and/or pay-off letters were filed with this Court which would support the Defendant's assertions that the amounts it was seeking to collect from the Plaintiff were actually proper, authorized by the Bridgewater Declaration, due and owing at the time the figures were issued, and not previously foreclosed. Without such admissible evidence to support its Motion for Summary Judgment, same must fail and be denied by this Court.

WHEREFORE, for the above mentioned reasons, Plaintiff respectfully requests that the Court deny Defendant's Motion for Summary Judgment.

LAW OFFICES
BECKER & POLIAKOFF, P.A.
121 ALHAMBRA PLAZA, 10TH FLOOR • • CORAL GABLES, FL 33134
TELEPHONE (305) 262-4433

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true and correct copy of the foregoing was served via

Electronic Mail to Mitchell L. Feldman, mfeldman@ffmlawgroup.com, Feldman, Fox, and

Morgado P.A.501 North Reo Street, Tampa, Fl. 33609 on 29 April 2013.

BECKER & POLIAKOFF, P.A.
Attorneys for
UNITED STATES of AMERICA
121 Alhambra Plaza, Tenth Floor
Coral Gables, FL 33134
Telephone:     (305) 262-4433
Telecopier:     (305) 442-2232
E-Mail:          sdavis@becker-poliakoff.com

By:___ s/Steven M. Davis___
        STEVEN M. DAVIS
        Florida Bar No. 894249

ACTIVE: U06092/332521:4638214_1