# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

**UNITED STATES OF AMERICA ,**

      **Plaintiff,**

**v.**                                    **Case No.  8:12-cv-1087-T-30TGW**

**BRIDGEWATER COMMUNITY
ASSOCIATION, INC.,**

      **Defendant.**

_____/

## ORDER

THIS CAUSE comes before the Court upon Defendant's Motion for Summary Judgment (Dkt. 36), Plaintiff's Response and Memorandum in Opposition to Defendant's Motion for Summary Judgment (Dkt. 41), Defendant's Reply Brief to Plaintiff's Response to Defendant's Motion for Summary Judgment (Dkt. 48), and Plaintiff's Sur-Reply (Dkt. 52). The Court, having reviewed the motion, responses, record evidence, and being otherwise advised in the premises, concludes the motion for summary judgment should be granted in part and denied in part.

## BACKGROUND

Plaintiff, the United States of America, brings this action on behalf of the Secretary of the Department of Housing and Urban Development (HUD) to determine the amount of assessments HUD owes pursuant to its ownership interest in the property within Defendant Bridgewater Community Association, Inc.  HUD asserts three claims against Bridgewater:

(1) a declaratory judgment that HUD is not liable for assessments which accrued prior to the transfer of title on the property following the foreclosure sale ("Count I"); (2) tortious interference with an advantageous business relationship ("Count II"); and (3) breach of contract based on Bridgewater's demand for assessments it was not owed under Bridgewater's Declaration ("Count III").  Bridgewater brings a counterclaim for declaratory judgment that it has not violated the terms of the Declaration and that HUD is liable for attorney's fees and costs it has incurred in attempting to recover assessments HUD owes it under the Declaration, including those which accrued prior to the transfer of title following the foreclosure sale ("Counterclaim").

Bridgewater now moves for summary judgment, presumably on Counts I, II, and III and its Counterclaim.[1]  As the non-movant, the following facts are taken in a light most favorable to HUD, although the majority of material facts are not disputed.

Bridgewater is a Florida not-for-profit corporation charged with the maintenance and operation of the Bridgewater community in Pasco County, Florida.  It operates pursuant to Florida Statutes Chapter 720 and is governed by its Declaration of Covenants and Restrictions for Bridgewater ("Declaration").  The Declaration was recorded on October 7, 2003, in the Official Records of Pasco County, Florida, Book 5574, Page 934 and contains the following two provisions pertinent to this action.

---

[1]Bridgewater does specifically identify which counts it is seeking summary judgment upon, thus the Court considers all four.  HUD does not move for summary judgment on any of its three Counts or the Counterclaim.

15.15   <u>Creation of the Lien and Personal Obligation</u>.  Each Owner, by acceptance of a deed or instrument of conveyance for the acquisition of title to a Home, shall be deemed to have covenanted and agreed that the Assessments, and/or other charges and fees set forth herein, together with interest, late fees, costs and reasonable attorney's fees and paraprofessional fees at all levels of proceedings including appeals, collections and bankruptcy, shall be a charge and continuing lien in favor of Association encumbering the Home and all personal property located thereon owned by the Owner against whom each such Assessment is made.  **The lien is effective from and after recording a Claim of lien in the Public Records stating the legal description of the Home, name of the Owner, and the amounts due as of that date, but shall relate back to the date that this Declaration is recorded.**  The Claim of Lien shall also cover any additional amounts which accrue thereafter until satisfied.  Each Assessment, together with interest, late fees, costs and reasonable attorneys' fees and paraprofessional fees at all levels including appeals, collections and bankruptcy, and other costs and expenses provided for herein, shall be the personal obligation of the person who was the Owner of the Home at the time when the Assessment became due, as well as the Owner's heirs, devisees, personal representatives, successors or assigns.

Ass'n Decl. at 32, Dkt. 1-1 (emphasis added).  Thus, section 15.15 states any lien for

assessments relate back to the October 7, 2003, recording date of the Declaration and would

presumptively take priority over subsequent liens, including bona fide first mortgages.

However, the following provision affords a key exception from liability for

subsequent acquirers of title who fall within its parameters.

15.16   <u>Subordination of the Lien to Mortgages</u>.  The lien for Assessments shall be subordinate to bona fide first mortgages held by a Lender on any Home, if the mortgage is recorded in the Public Records prior to the Claim of Lien.  **The lien for Assessments shall not be affected by any sale or transfer of a Home, except in the event of a sale or transfer (by deed in lieu of foreclosure or otherwise) of a Home pursuant to a foreclosure of a bona fide first mortgage, in which event, the acquirer of title, its successors and assigns, shall not be liable for Assessments encumbering the Home or chargeable to the former Owner of the Home which became due prior to such sale or transfer.**  However, any such unpaid Assessments for which such acquirer of title is not liable may be reallocated and assessed to all Owners (including such acquirer of title) as a part of Operating Costs

included within Installment Assessments.  Any sale or transfer pursuant to a foreclosure (by deed in lieu of foreclosure or otherwise) shall not relieve the Owner from liability for, nor the Home from the lien of, any Assessments made thereafter.  Nothing herein contained shall be construed as releasing the party liable for any delinquent Assessments from the payment thereof, or the enforcement of collection by means other than foreclosure.  **A Lender shall give written notice to Association if the mortgage held by such Lender is in default.  Association shall have the right, but not the obligation, to cure such default within the time periods applicable to Owner.**  In the event Association makes such payment on behalf of an Owner, Association, shall, in addition to all other rights reserved herein, be subrogated to all the rights of the Lender. All amounts advanced on behalf of an Owner pursuant to this Section shall be added to Assessments payable by such Owner with appropriate interest.

Ass'n Decl. at 32, Dkt. 1-1 (emphasis added).  Section 15.16 does two important things.

First, it terminates a lien for assessments that became due prior to the transfer of title to a

property pursuant to a foreclosure of a bona fide first mortgage, thereby exempting a

subsequent owner from assessments that arose before acquiring title.  Second, it requires the

holder of the first mortgage to give "written notice" to Bridgewater if the mortgage is in

default and provides Bridgewater with the right to cure the default "within the time periods

applicable to Owner."  Neither of these phrases, "written notice" or "time periods applicable

to Owner" are defined in the Declaration.

On December 8, 2005, Wells Fargo Bank, N.A. obtained a mortgage[2] which

encumbered property located at 31132 Masena Drive, Wesley Chapel, Florida 33544, legally

described as:

---

[2]Bridgewater states in its motion for summary judgment that Universal American Mortgage Company, LLC, issued the mortgage in 2004 and assigned it to Wells Fargo.  However, it is immaterial to the instant motion how Wells Fargo came into possession of the mortgage.

> Lot 11, Block 10, BRIDGEWATER PHASE 1 and 2, according to the Plat thereof as recorded in Plat Book 48, Page 110, of the Public Records of Pasco County, Florida, and any subsequent amendments thereto.

("Property").  The Property is located within Bridgewater.  The mortgage was recorded on December 30, 2005, in the Official Records of Pasco County.

On March 6, 2008, Wells Fargo filed a mortgage foreclosure action in the Circuit Court of Pasco County, Florida.  Wells Fargo named Bridgewater as a defendant in the foreclosure action, and Bridgewater was served with a summons and complaint on May 6, 2008.  Dkt. 41-1.  On August 6, 2008, a Claim of Lien for unpaid homeowner's association assessments was recorded in the public records of Pasco County, Florida.  Bridgewater never filed an answer in the foreclosure action and a default was entered against it.

Wells Fargo received a uniform final judgment of foreclosure on the mortgage on February 12, 2010.  Dkt. 41-1.  The foreclosure judgment gave Wells Fargo a lien for the total sum of $164,213.41 and held Wells Fargo's lien as superior to all other claims, including any interest or right held by Bridgewater, a named defendant.  *See* Dkt. 41-1.

In accordance with the foreclosure judgment, the Property was sold at a foreclosure auction where Wells Fargo was the successful bidder.  On May 26, 2010, a Certificate of Title was issued to Wells Fargo and recorded in the Official Records of Pasco County.  On June 17, 2010, Wells Fargo conveyed the property to HUD via a special warranty deed, which also was recorded.[3]

---

[3]HUD insured Wells Fargo's mortgage on the Property.  Once Wells Fargo obtained title to the property through the foreclosure sale, it applied for and obtained insurance benefits from HUD.
(continued...)

On July 1, 2011, in response to an estoppel request sent by HUD,[4] Bridgewater sent an estoppel certificate with a payoff of $10,181.64.  The estoppel certificate sought to collect assessments and other amounts owed against the Property *prior* to February 12, 2010, and *prior* to Wells Fargo obtaining its Certificate of Title on May 26, 2010, as well as legal fees and other costs.  On September 27, 2011, Bridgewater issued a second estoppel certificate with a payoff of $12,677.27, again claiming unpaid assessments, costs, and amounts owed prior to the foreclosure judgment and sale.  Bridgewater's letter explained that the Subordination provision of its Declaration required prior written notice of default before Wells Fargo could commence a foreclosure action and, since such notice was not given to Bridgewater, it was not entitled to the benefit of the subordination provision in section 15.16.

The estoppel requests were sent by HUD because of a sales contract with a potential third-party purchaser, Richard Klein.  HUD claims that Bridgewater was on notice of this potential sale by requesting the estoppel letters and, that due to Bridgewater's inflated demands and even after extending the closing date seven times to resolve the outstanding assessments, the sales contract did not close and the potential purchaser walked away.  According to the deposition of Bonnie Ann Losurdo, who manages and oversees the marketing of sales for HUD properties, the outstanding assessments were the only unresolved

---

[3](...continued)
As a result of paying those benefits, HUD accepted a special warranty deed for the Property.

[4]An estoppel is a certificate signed by an officer or authorized agent of the association stating all assessments and other moneys owed to the association by the parcel owner or mortgagee with respect to the parcel.  Florida Statutes § 720.30851 authorizes an estoppel certificate and contains a procedure for obtaining one.

issue and the reason the buyer backed out of the sales contract on the Property. Bridgewater argues that it was justified in issuing the estoppel certificates that included the pre-foreclosure assessments based on its interpretation of the Declaration. These facts give rise to HUD's claim of tortious interference with a business relationship in Count II.

In Count III, the claim for breach of contract, HUD asserts that Bridgewater's demand for assessments and other costs which accrued prior to May 26, 2010, violates section 15.16 of the Declaration. HUD seeks attorney's fees and costs for breach of contract pursuant to the Declaration and Florida Statute § 720.305.

In the Counterclaim, Bridgewater seeks a declaratory judgment that it has not violated the Declaration, that HUD is liable for assessments and other costs which accrued prior to May 26, 2010, and that HUD is liable for attorney's fees and legal costs for efforts by Bridgewater in attempting to collect these assessments.

Bridgewater now moves for summary judgment, claiming that Wells Fargo breached the Declaration by failing to provide pre-suit written notice of default. Per Bridgewater, this alleged breach prevents HUD from seeking the lien subordination benefits of section 15.16. Thus, Bridgewater claims that it should be granted summary judgment on Counts I and III and on its Counterclaim. Bridgewater claims it should also be granted summary judgment on Count II because it was justified in claiming the additional assessments. The Court concludes that Bridgewater is not entitled to summary judgment on Counts I, III, and its Counterclaim, but it is entitled to summary judgment on Count II.

## SUMMARY JUDGMENT STANDARD OF REVIEW

Motions for summary judgment should be granted only when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact."  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986) (emphasis in original).  The substantive law applicable to the claimed causes of action will identify which facts are material.  *Id.*  Throughout this analysis, the court must examine the evidence in the light most favorable to the non-movant and draw all justifiable inferences in its favor.  *Id.* at 255.

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial.  *Celotex,* 477 U.S. at 324.  The evidence must be significantly probative to support the claims.  *Anderson,* 477 U.S. at 248-49 (1986).

This Court may not decide a genuine factual dispute at the summary judgment stage. *Fernandez v. Bankers Nat'l Life Ins. Co.,* 906 F.2d 559, 564 (11th Cir. 1990).  "[I]f factual issues are present, the Court must deny the motion and proceed to trial." *Warrior Tombigbee*

*Transp. Co. v. M/V Nan Fung,* 695 F.2d 1294, 1296 (11th Cir. 1983).   A dispute about a

material fact is genuine and summary judgment is inappropriate if the evidence is such that

a reasonable jury could return a verdict for the nonmoving party. *Anderson,* 477 U.S. at 248;

*Hoffman v. Allied Corp.,* 912 F.2d 1379 (11th Cir. 1990).   However, there must exist a

conflict in substantial evidence to pose a jury question. *Verbraeken v. Westinghouse Elec.*

*Corp.*, 881 F.2d 1041, 1045 (11th Cir. 1989).

## **DISCUSSION**

**I.     Count I and Counterclaim: Declaratory Judgment on Liability of Assessments**

In Count I, HUD seeks a judgment from this Court declaring

1.  That HUD is not liable for assessments, late fees, legal fees and costs which
accrued against the PROPERTY prior [to] May 26, 2010 when Wells Fargo
took title;
2.  That HUD is not liable for legal fees and costs which BRIDGEWATER
claims it incurred following Wells Fargo taking title given BRIDGEWATER
incurred these legal fees and costs by attempting to recover funds it was not
owed and refusing to remedy their error;
3.  That HUD is only liable for assessments, interest, and late fees which
accrued against the PROPERTY after May 26, 2010 when Wells Fargo took
title, in the approximate amount of $500.00 through and including March 21,
2012;
4.  That any purchaser of the PROPERTY from HUD is only liable for those
assessments, interest and late fees which accrue against the PROPERTY from
the date the purchaser takes title forward.

Dkt. 1 at 6-7.

In the Counterclaim, Bridgewater seeks a judgment from this Court declaring

A. [] that the Association has not violated the terms of the Declaration;
B. [] that HUD is liable for assessments, late fees, legal fees and costs which
accrued against the property prior to May 26, 2010 when Wells Fargo took
title;

C. [] that HUD is liable for legal fees and costs which the Association has incurred by attempting to recover funds it was entitled to after Wells Fargo took title to the property;

D.  Awarding the Association its costs, expenses, and reasonable attorneys' fees pursuant to Article 15.18 of the Declaration and Florida Statutes § 720.305(1).

Dkt. 13 at 10.  Essentially, both Count I and the Counterclaim seek a declaratory judgment regarding whether HUD is liable for assessments and costs which accrued against the Property *prior* to May 26, 2010, when Wells Fargo received a Certificate of Title.

HUD filed affirmative defenses to the Counterclaim, most importantly alleging that "[t]o the extent Defendant had any claim for pre-certificate of title expenses, it waived its claim by failing to file an answer and affirmative defense to the foreclosure action brought by Wells Fargo which resulted in a default being entered against it."  Dkt. 17 at 3. Bridgewater does not address the effect of the state court foreclosure judgment on its Counterclaim.  Instead, it argues that its claim for assessments was not extinguished because Wells Fargo failed to comply with the "condition precedent" of providing it written notice as required by the Declaration, thus it was not required to subordinate its lien of assessments to Wells Fargo's first mortgage.  Putting aside for the moment whether the service of the complaint of foreclosure operates as "written notice," Bridgewater's failure to rebut HUD's affirmative defense is alone sufficient to deny summary judgment in its favor.  *See CFBP, LLC, v. U.S. Bank, Nat'l Ass'n*, 800 F. Supp. 2d 1169, 1182 (M.D. Fla. 2011).

The primary issue of the declaratory judgment actions is whether HUD owes assessments accrued prior to May 26, 2010.  To address that core dispute, the Court need not

determine whether Wells Fargo provided Bridgewater with the proper "written notice" and, if not, whether failure to do so was a condition precedent to the subordination provision. This issue was clearly resolved by the state court foreclosure judgment and issuance of the certificate of title to Wells Fargo.

The foreclosure judgment stated:

> The lien of the Plaintiff is superior in dignity to any right, title, interest, or claim of the Defendants and all persons, corporations, and other entities claiming by, though [sic], or under the defendants or any of them and the property will be sold free and clear of all claims of the defendants, with the exception of any assessments that are superior pursuant to Sections 718.116 and 720.3085, Florida Statutes.

Dkt. 41-1.  Bridgewater was served with the foreclosure complaint and failed to raise any defense as to why its lien of assessments was superior to Wells Fargo's first mortgage.  Nor did Bridgewater attempt to cure the default prior to the foreclosure sale.  Any potential superior lien Bridgewater had based on its contractual right from the Declaration was extinguished by that court's judgment.[5]

_____

[5]The Court notes that Bridgewater, even if it had defended in state court, would likely have lost on the issue of its lien priority.  Section 15.16 states "[t]he lien for Assessments shall be subordinate to bona fide first mortgages held by a Lender on a Home, *if* the mortgage is recorded in the Public Records *prior* to the Claim of Lien" (emphasis added).  That appears impossible based on Bridgewater's claim that section 15.15 permits all liens of assessment to relate back to the date of the Declaration.  Such an interpretation would likely render the subordination provision of section 15.16 meaningless in effect because no mortgage could ever be recorded on the Property prior to the Declaration and still be subject to Bridgewater's assessments.  When a contract is subject to two interpretations, a court is required to give preference to a reasonable interpretation of a contract over an unreasonable interpretation.  *Hunt v. First Nat'l Bank of Tampa*, 381 So. 2d 1194, 1197 (Fla. 2d DCA 1980) ("Where one interpretation would lead to an agreement which is fair and equitable, while another interpretation would result in an unfair and inequitable agreement, the former must be selected.").  Moreover, allowing all liens of assessment to relate back to the date of the

(continued...)

Under the *Rooker-Feldman* doctrine, this Court cannot now review that state court judgment for error. *Vasquez v. YII Shipping Co., Ltd.*, 692 F.3d 1192, 1195-96 (11th Cir. 2012). The *Rooker-Feldman* doctrine precludes a "district court from exercising subject-matter jurisdiction in an action it would otherwise be empowered to adjudicate" based on the Supreme Court's "appellate jurisdiction over state-court judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291 (2005). The "doctrine is confined to cases that, like *Rooker* and *Feldman*, were 'brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and *inviting court review and rejection of those judgments.*'" *Vasquez*, 692 F.3d at 1195-96 (quoting *Exxon Mobil*, 544 U.S. at 284)). Bridgewater, as the losing party in the state court foreclosure action, is seeking relief from this Court for its loss of alleged lien priority and extinguishment of its lien of assessments and costs. That sort of appellate review is not permitted by this Court.

HUD and Bridgewater may, however, seek a declaratory judgment concerning whether HUD owes any assessments under the foreclosure judgment's exception for "assessments that are superior pursuant to Sections 718.116 and 720.3085, Florida Statutes." Florida Statute § 718.116 is irrelevant because it applies to condominiums. Florida Statute § 720.3085 applies to homeowners' associations. However, it was enacted in 2007 after the

---

[5](...continued)

Declaration would render title searches pointless because no lender could find unrecorded future liens for assessments. Thus, even if the state court found Wells Fargo had breached section 15.16, it would likely have found the contract did not automatically give lien priority to Bridgewater's assessments over Wells Fargo's bona fide first mortgage on the Property.

Declaration and first mortgage was recorded, thus it cannot retroactively apply to impair a vested contract right. *Coral Lakes Comm. Ass'n v. Busey Bank, N.A.*, 30 So. 3d 579, 584 (Fla. 2d DCA 2010).

Both parties cite *Coral Lakes Community Association v. Busey Bank, N.A.*, for support of their positions. *Id.* In *Coral Lakes*, a bank instituted a foreclosure action against a homeowners association ("HOA") as a party defendant because of accrued unpaid assessments. *Id.* at 581. The HOA Declaration included the following provision:

> 9.1.6 Subordination of Lien. Where any person obtains title to a LOT pursuant to the foreclosure of a first mortgage of record, or where the holder of a first mortgage accepts a deed to a LOT in lieu of foreclosure of the first mortgage of record of such lender, such acquirer of title, its successors and assigns, shall not be liable for any ASSESSMENTS or for other moneys owed to Coral Lakes which are chargeable to the former OWNER of the LOT and which became due prior to acquisition of title as a result of the foreclosure or deed in lieu thereof, unless the payment of such funds is secured by a claim of lien recorded prior to the recording of the foreclosed or underlying mortgage.

*Id.*

The HOA answered and claimed as an affirmative defense that pursuant to § 720.3085, Florida Statutes (2007), the Bank's mortgage was subordinate to all of the mortgaged premises' unpaid expenses which would accrue before the Bank's acquisition of title at the foreclosure sale or by deed in lieu of foreclosure. *Id.* at 582. On July 1, 2007, Florida Statute § 720.3085 became effective and provided in part:

> (1) A parcel owner, regardless of how his or her title to property has been acquired, including by purchase at a foreclosure sale or by deed in lieu of foreclosure, is liable for all assessments that come due while he or she is the parcel owner. The parcel owner's liability for assessments may not be avoided

by waiver or suspension of the use or enjoyment of any common area or by abandonment of the parcel upon which the assessments are made.

(2) A parcel owner is jointly and severally liable with the previous parcel owner for all unpaid assessments that came due up to the time of transfer of title.  This liability is without prejudice to any right the present parcel owner may have to recover any amounts paid by the present owner form the previous owner.

Effective July 1, 2008, the Florida Legislature amended the statute.  Notably, it added subsection 2(c) which limits the liability for unpaid assessments of a first mortgagee to the prior twelve months' worth of unpaid assessments or one percent of the original mortgage debt, whichever is less.  Fla. Stat. § 720.3085(2)(c) (2008).[6]

---

[6]The full text states:

(2)(c) Notwithstanding anything to the contrary contained in this section, the liability of a first mortgagee, or its successor or assignee as a subsequent holder of the first mortgage who acquires title tot a parcel by foreclosure or by deed in lieu of foreclosure for the unpaid assessments that became due before the mortgagee's acquisition of title, shall be the lesser of:

1.   The parcel's unpaid common expenses and regular periodic or special assessments that accrued or came due during the 12 months immediately preceding the acquisition of title and for which payment in fully has not been received by the association; or

2.  One percent of the original mortgage debt.

The limitations on first mortgagee liability provided by this paragraph apply only if the first mortgagee field suit against the parcel owner and initially joined the association as a defendant in the mortgagee foreclosure action.  Joinder of the association is not required if, on the date the complaint is filed, the association was dissolved or did not maintain an office or agent for service of process at a location that was known to or reasonably discoverable by the mortgagee.

Fla. Stat.,§ 720.3085(2)(c) (2008).

On summary judgment, the Bank argued that at the time of execution of its note and mortgage in 2006, the HOA's Declaration gave its lien a distinct and advantageous priority over any HOA lien for assessments. *Coral Lakes*, 30 So. 3d at 583. As a third-party beneficiary of the Declaration, the Bank argued this benefit could not be removed by operation of the statute which was not in existence at the time it entered into contract with the homeowners. *Id.* Finally, the Bank argued applying the new statutory language would impair its vested lien priority and be an unconstitutional impairment of its contractual rights. *Id.*

The Second District Court of Appeal agreed with the Bank, holding that "because of the Declaration's plain and unambiguous language subordinating any claim for unpaid HOA assessments to a first mortgagee's claim upon foreclosure or deed in lieu of foreclosure, it controls and absolves the Bank, as first mortgagee, from liability for any assessments accruing before it acquires the parcel." *Id.* at 583-84. The Second DCA reasoned that first mortgagees are third-party beneficiaries with vested contractual rights in the Declaration and that retroactive application of the statute would infringe Florida's "well-accepted principle that virtually no degree of contract impairment is tolerable." *Id.* at 584 (quoting *Pomponio v. Claridge of Pompano Condo., Inc.*, 378 So. 2d 774, 780 (Fla. 1979)); *see* art. I, § 10, Fla. Const. ("No bill of attainder, ex post facto law or law impairing the obligation of contracts shall be passed.").

Bridgewater argues that subsection 2(c)'s limitation of first mortgagee liability does not apply to HUD because the foreclosure action was filed in March 2008, before subsection

2(c) of § 720.3085 became effective July 1, 2008.  Rather, Bridgewater relies on the statute's

2007 version which holds "[a] parcel owner [] jointly and severally liable with the previous

parcel owner for all unpaid assessments that came due up to the time of transfer of title."  Fla.

Stat. § 720.3085(2)(a) (2007).

Bridgewater misses the relevant date.  For purposes of statutory application over

contracts, the key date is execution of the contract, not when the lawsuit is filed.  *See*

*Menendez v. Progressive Express Ins. Co., Inc.*, 35 So. 3d 873, 876 (Fla. 2010) ("[T]he

statute in effect at the time [a] contract is executed governs substantive issues arising in

connection with that contract.").  According to HUD, Wells Fargo's mortgage was issued on

December 8, 2005.  According to Bridgewater, Universal American Mortgage Company,

LLC, issued the mortgage in 2004 and assigned it to Wells Fargo in 2005.  The exact date

is not a material fact because either execution date of the mortgage predates enactment of

Florida Statute § 720.3085 in 2007.  Therefore, like *Coral Lakes*, any retroactive application

of the statute would be an impermissible impairment of HUD's contractual rights.

The Declaration is not ambiguous about the first mortgagee's right to subordinate

Bridgewater's lien for assessments.  Any argument that Wells Fargo forfeited its right to

subordination because of its failure to provide written notice to Bridgewater should have

been raised in the state court foreclosure action.  Bridgewater's failure to rebut this

affirmative defense to its Counterclaim precludes summary judgment in its favor on the issue

of whether HUD is liable for assessments which accrued prior to May 26, 2010.

II.      **Count II: Tortious Interference with A Business Relationship**

The elements of a claim for tortious interference with a business relationship are: (1) the existence of a business relationship; (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damages to the plaintiff as a result of the breach of the relationship. *Networkip, LLC v. Spread Enters., Inc.*, 922 So. 2d 355, 357-58 (Fla. 3d DCA 2006).

There are sufficient facts on the record to support that a business relationship existed between HUD and a potential purchaser of the Property, Richard Klein.   Additionally, knowledge of the relationship may be implied based on HUD's request for the estoppel certificates in order to sell the Property.   Bridgewater's primary argument in favor of summary judgment is that HUD has failed to establish any facts that support "an intentional and unjustified interference with the relationship" by Bridgewater.   The Court agrees.

"A cause of action for tortious interference requires a showing of both an intent to damage the business relationship and a lack of justification to take the action which caused the damage." *Networkip*, 922 So. 2d at 358.   Additionally, "[p]rotecting a company's own economic interest to reduce the risk of incurring further loss does not constitute intent to damage within the meaning of a cause of action for intentional interference with [a] business relationship." *Id.* (reversing summary judgment on tortious interference claim when defendant cancelled contract pursuant to its terms to prevent further financial loss); *see also Ethyl Corp. v. Balter*, 386 So. 2d 1220, 1225 (Fla. 3d DCA 1980) (reversing judgment on tortious interference and holding that "so long as improper means are not employed,

activities taken to safeguard or promote one's own financial and contractual interests are entirely non-actionable").

Here, HUD does not dispute that it still owes Bridgewater assessments and costs which accrued after Wells Fargo took title and which were listed in the estoppel certificates sent by Bridgewater. Rather, it argues that Bridgewater's "improper" estoppel figures were the intentional and unjustified interference with its sales contract. However, as a matter of law, a party's actions to protect its own financial interests and protect its contractual rights is not an unjustified interference with another's business relationship. *See Networkip*, 922 So. 2d at 358. Bridgewater asserted claims for assessments it believed it was rightfully owed under the Declaration, some of which HUD does not even dispute. Even though Bridgewater was ultimately mistaken about the exact amount due, HUD has failed to proffer any evidence that Bridgewater's claims were in bad faith or such an unreasonable interpretation of the Declaration as to be a "malicious interference" in HUD's business relationship with Klein. *McKinney-Green, Inc. v. Davis*, 606 So. 2d 393, 397 (Fla. 1st DCA 1992) ("The gravamen of an action for tortious interference with a contractual relationship is the malicious interference by a third party, with a contract between other persons, whereby one contracting party is induced to breach the contract to the injury of the other."). Accordingly, Bridgewater is entitled to summary judgment on Count II.

## III.    Count III: Breach of Contract

As noted above, part of the declaratory relief sought in the Counterclaim is whether Bridgewater violated the Declaration and an award of attorney's fees and costs to

Bridgewater.  In Count III, which HUD labels Breach of Contract, HUD seeks a judgment from the Court that Bridgewater violated the Declaration and to determine the actual amount HUD owes for maintenance as well as an award of attorney's fees and costs.

In order to determine whether HUD or Bridgewater are entitled to attorney's fees based on the other party's breach of the Declaration, the Court must interpret the terms of the Declaration.  Specifically, the two disputed phrases in section 15.16 are "written notice" and "within the time periods applicable to Owner."

Contract interpretation is a matter of law to be determined by the Court.  *Technical Coating Apps., Inc. v. U.S. Fid. & Guar. Co.*, 157 F.3d 843, 844 (11th Cir. 1998).  "When the language of a contract is clear and unambiguous, its interpretation or construction is a matter of law."  *Action Nissan, Inc. v. Hyundai Motro Am.*, 617 F. Supp. 2d 1177, 1187 (M.D. Fla. 2008).  "Restrictions found within a Declaration are afforded a strong presumption of validity, and a reasonable unambiguous restriction will be enforced according to the intent of the parties as expressed by the clear and ordinary meaning of its terms. . . ." *Coral Lakes*, 30 So. 3d at 584 (quoting *Shields v. Andros Isle Prop. Owners Ass'n, Inc.*, 872 So. 2d 1003, 1005-06 (Fla. 4th DCA 2004)).  "Under Florida law, which governs this dispute, 'courts may not rewrite a contract or interfere with the freedom of contract or substitute their judgment for that of the parties thereto in order to relieve one of the parties from the apparent hardship or improvident bargain.'" *CFBP, LLC v. U.S. Bank, Nat'l Ass'n*, 800 F. Supp. 2d 1169, 1177 (M.D. Fla. 2011) (quoting *Beach Resort Hotel Corp. v. Wieder*, 79 So. 2d 659, 663 (Fla. 1955)).

To the extent any ambiguity does exist in a contract, the ambiguity will be strictly construed against the drafter. *Am. K-9 Detection Servs., Inc. v. Cicero*, 100 So. 3d 236, 239 (Fla. 5th DCA 2012). In interpreting a contract, courts should not read a single term or group of words in isolation. *Id.* at 238. "[T]he goal is to arrive at a reasonable interpretation of the text of the entire agreement to accomplish its stated meaning and purpose." *Delissio v. Delissio*, 821 So. 2d 350, 353 (Fla. 1st DCA 2002).

Section 15.16 of the Declaration states a "Lender shall give written notice to Association if the mortgage held by such Lender is in default. Association shall have the right, but not the obligation, to cure such default within the time periods applicable to Owner." The Court must construe a contract in accordance with the intent of the parties as expressed by the ordinary meaning of its terms. *Coral Lakes*, 30 So. 3d at 584. A plain reading of this provision shows that there is no requirement for *pre-foreclosure* notice of default. The only time limit is when Bridgewater can *cure* the default, not when it is entitled to *notice* of such default. Bridgewater's argument that the applicable time period for notice of default is governed by HUD's Regulations found at 24 C.F.R. § 203.602 is inapposite because that regulation addresses when a mortgagee must provide notice to the mortgagor of default, *not* when the mortgagor may cure such default. Bridgewater makes no arguments regarding Wells Fargo's failure to allow it to cure the default within the applicable time period.

Bridgewater claims that Wells Fargo provided *no* written notice of the default. However, Bridgewater was served with the foreclosure complaint on May 6, 2008. The law

is clear that "the filing of suit to foreclose operates as notice to the mortgagor of the election to accelerate, where the election to do so is declared in the complaint . . . or, in the absence of such declaration, where the complaint on its face shows that foreclosure for the entire mortgage indebtedness is sought therein." *Fowler v. First Fed. Sav. & Loan Ass'n of Defuniak Springs*, 643 So. 2d 30, 34 (Fla. 1st DCA 1994). Clearly, Bridgewater's receipt of the foreclosure complaint in which it was named a defendant operated as notice of the mortgagor's default. The Declaration did not specify what *type* of "written notice" Wells Fargo must provide Bridgewater, and the Court cannot impose additional requirements to the plain language of the Declaration. Moreover, if this term can be considered ambiguous, it must be construed against the drafter, Bridgewater. Bridgewater could have defined "written notice" in the Declaration or not included a subordination provision at all. Instead, it chose to include this benefit in order to entice lenders to finance purchases in its community. *See Coral Lakes*, 30 So. 3d at 584. The Court will not now protect it against its own Declaration language.

The Court concludes, as a matter of law, that Wells Fargo provided written notice of default in accordance with section 15.16.[7] Therefore, the Court holds that Wells Fargo did not violate the Declaration. Accordingly, the Court refrains from deciding whether the "written notice" provision was a condition precedent, dependent covenant, or the core

---

[7]HUD also argues that Bridgewater received constructive notice through Wells Fargo's filing a notice of lis pendens prior to the foreclosure action. Because the Court concludes service with the foreclosure complaint satisfied section 15.16's written notice requirement, the Court will not address whether the notice of lis pendens also satisfies that provision.

consideration for Bridgewater's promise to subordinate its lien for assessments to a first mortgage.

## IV.  Remaining Issues: Assessments Owed by HUD & Attorney's Fees and Costs

As discussed above, HUD did not move for summary judgment on any of the Counts or Counterclaim.  HUD alone is seeking a declaratory judgment of the proper amounts owing to Bridgewater,[8] and it admits that it has not paid any assessments owed to Bridgewater since obtaining title, including fees that became due *after* May 26, 2010.  Even if HUD had moved for summary judgment on the issue of the remaining assessments owed Bridgewater, it must be denied based on the disputed material facts in the record.

In the second estoppel certificate issued by Bridgewater on September 27, 2011, Bridgewater included all unpaid assessments and other charges, including interest, late fees, costs and reasonable attorney's fees assessed to the Property prior to its conveyance to Wells Fargo as well as including a transfer fee, capital contribution fee, release fee, and individual assessments for line items such as lawn service, mailbox replacement, painting, power washing, and gardening.  Per the declaration of Mark Spector, the President of Bridgewater, the balance due on the Property as of April 2, 2013, including interest, totals $16,058.57. Dkt. 45.

Based on the Court's above discussion, all assessments which accrued prior to May 26, 2010, are impermissible charges recoverable against HUD.  Thus, the amount claimed

---

[8]Bridgewater's Counterclaim does not include a judgment from this Court as to the amount HUD currently owes it.

in Mark Spector's declaration is clearly inaccurate on that basis alone.  However, HUD also disputes the following post-May 26, 2010, line items: special assessment charges, late fees, individual assessment charges (including repairs and maintenance on the Property), inspection fees, transfer fees, and capital contribution fees.  In support of its claim, HUD points to the declaration of Magda Nino, HUD's contractor in charge of managing the Property, who claims that he has been responsible for the lawn care and maintenance of the structure and that Bridgewater has not provided any notice of necessary repairs as required by the Declaration before the it can exercise self-help.  Dkt. 41-2.  HUD also claims that the foreclosure judgment shows its predecessor, Wells Fargo, had paid for certain lawn care expenses that Bridgewater now seeks to recover.

HUD also disputes many of the assessments based on Bridgewater's failure to identify authority from the Declaration for charging them.  For example, Article 19.3 requires seven days written notice before Bridgewater may exercise self-help.  As referenced above, Magda Nino claims no such notice has been provided to HUD, and HUD should not be liable for any such charges.  HUD also claims that Article 15.12 permits a "resale capital contribution" only on a conveyance of an ownership interest by an owner.  HUD argues this assessment is an impermissible fee as to it because it obtained title as a result of foreclosure.

Because of the disputed material facts as to what amounts are owing, the Court cannot grant summary judgment to either party on this issue.  Relatedly, until the amounts owing are determined, the Court cannot grant attorney's fees to either party.  Thus, the issues of the

proper assessments owed by HUD and the proper attorney's fees and legal costs, if any are authorized by the Declaration or Florida Statute § 720.305, are premature at this juncture.

## V.     Conclusion

Although HUD did not move for summary judgment, the Court concludes that it is entitled to a declaratory judgment under Count I that it is not liable for assessments, late fees, legal fees and costs which accrued against the Property prior to May 26, 2010, when Wells Fargo took title, and that it is not liable for legal fees and costs which Bridgewater incurred in attempting to recover those pre-foreclosure assessments.  Furthermore, HUD is entitled to a declaratory judgment under Count III that Bridgewater violated the Declaration by refusing to subordinate its lien of assessments to HUD's first mortgage.  Similarly, HUD is entitled to summary judgment on the following issues in Bridgewater's Counterclaim: (1) that Bridgewater did not violate the terms of the Declaration and (2) that HUD is liable for assessments, late fees, legal fees an costs which accrued against the Property prior to May 26, 2010 when Wells Fargo took title.

Before entering summary judgment in HUD's favor on the above issues, the Court grants Bridgewater eleven (11) days to file a response as to why the Court should not do so.

It is therefore ORDERED AND ADJUDGED that:

1.      Defendant's Motion for Summary Judgment (Dkt. 36) is granted in part and denied in part as stated herein.

2.      Summary judgment is granted in favor of Defendant on Count II, Tortious Interference with a Business Relationship.

3.     Defendant may file a response within eleven (11) days of the date of this Order as to why the Court should not grant summary judgment on the above-delineated issues in favor of Plaintiff on Counts I and II and the Counterclaim.

**DONE** and **ORDERED** in Tampa, Florida on June 27, 2013.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Odd\2012\12-cv-1087.sumjudorder.frm